NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
BRETT A. SAGEL (CBN: 243918)
Assistant United States Attorney
    Ronald Reagan Federal Building
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3598
    Facsimile: (714) 338-3708
    Email:  Brett.Sagel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 18-72-JVS |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO PRE-SENTENCE REPORT AND GOVERNMENT'S POSITION RE: SENTENCING FOR DEFENDANT DUC CAO |
| v. | |
| DUC CAO, | |
| Defendant. | Hearing Date: May 20, 2019<br>Hearing Time: 8:30 a.m. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Brett A. Sagel, hereby files its response to the Pre-Sentence Report and its position regarding sentencing for defendant DUC CAO.

///

The Government's sentencing position and response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 6, 2019           Respectfully submitted,

                             NICOLA T. HANNA
                             United States Attorney

                             LAWRENCE S. MIDDLETON
                             Assistant United States Attorney
                             Chief, Criminal Division


                                    /s/
                             BRETT A. SAGEL
                             Assistant United States Attorney

                             Attorneys for Plaintiff
                             UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On January 24, 2019, defendant DUC CAO ("defendant") pled guilty to count one of the indictment in case number SA CR 18-72-JVS, charging defendant with conspiracy to manufacture, possess with intent to distribute, and distribute Schedule II and IV Controlled Substances, in violation of 21 U.S.C. § 846.  The United States Probation Office ("USPO") disclosed its Presentence Report ("PSR") to the parties on April 5, 2019.  The USPO determined defendant's total offense level to be 35, and he is a criminal history category I, resulting in a range of imprisonment of 168-210 months.  The USPO recommends that defendant receive a sentence of 97 months imprisonment, and a three year period of supervised release.

The Government has no objections to the factual statements in the PSR or the calculation of criminal history category.  The Government, however, disagrees with the USPO's determination of mitigating factors.  For the reasons set forth below, the Government believes that the appropriate total offense level should be 31 and the advisory sentencing guideline range would be 108-135 months' imprisonment.  As a result, the Government recommends a term of imprisonment of 108 months and a three-year term of supervised release.

**II.   FACTUAL BACKGROUND**

Defendant admitted to the following facts pursuant to the factual basis of his plea agreement:

Beginning at least as early as in or about August 2017 and continuing until on or about April 3, 2018, in Orange County, within the Central District of California, and elsewhere, defendant along

with codefendants Wyatt Pasek and Isaiah Suarez, and others, conspired and agreed with each other to knowingly and intentionally manufacture, possess with intent to distribute, and distribute: a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance; mixtures and substances containing detectable amounts of analogues of fentanyl, including, cyclopropyl fentanyl, methoxyacetyl fentanyl, and carfentanil, each Schedule II controlled substances; and a mixture and substance containing a detectable amount of alprazolam, also known as "Xanax," a Schedule IV controlled substance.

Defendant and codefendants Pasek and Suarez used the fentanyl and analogues of fentanyl to manufacture counterfeit pills to appear as legitimate 30 mg pharmaceutical grade Oxycodone.  Both real Oxycodone and the counterfeit pills defendant and codefendants manufactured and distributed contain the stamp "A215" on them and are round and blue in color.  Defendant and codefendants Pasek and Suarez used the alprazolam to manufacture counterfeit pills to appear as legitimate 2 mg pharmaceutical grade Xanax.  Both real Xanax and the counterfeit pills defendant and codefendants manufactured and distributed contain the stamp "GG249" on them and are oblong and white in color.

Defendant and codefendant Pasek ordered chemicals and equipment on the internet from China and elsewhere for the manufacturing and distribution of the counterfeit Oxycodone pills, which included: the fentanyl and fentanyl analogues; a pill press; pill press molds; and mylar and zip-lock bags.  Defendant and codefendant Pasek discussed how to manufacture the pills and the dosage to use to make the pills. Starting in approximately October 2017 and continuing to

approximately April 3, 2018, codefendant Pasek paid for an apartment in Newport Beach for codefendant Suarez to live. Defendant and codefendants Pasek and Suarez used the apartment in Newport Beach as a clandestine laboratory to manufacture the drugs and stored and maintained the drugs there for distribution to others. Defendant and his codefendants kept the pill presses, small scales, drugs, dyes, binding agents, and bags, among other items to manufacture and distribute the drugs, at codefendant Suarez's apartment, and defendant and codefendant Suarez pressed the pills at the apartment to be distributed. Defendant and codefendant Pasek operated a marketplace on the darkweb to sell and distribute the drugs that defendant and his codefendants manufactured. In addition to the drugs that defendant and codefendant Pasek sold over the darkweb, defendant also manufactured pills that codefendant Pasek sold locally. Defendant assisted codefendant Pasek to sell the drugs on his online vendor marketplace, including defendant determining what orders to fulfill, how many pills defendant and others needed to press to fulfill the orders, and where to send the orders. Defendant and codefendant Pasek purchased postage online and distributed the drugs using the United States Postal Service ("USPS"). Defendant created postal labels for the USPS parcels using fictitious names and random addresses for the return address, placed the drugs in mylar bags within the parcels to prevent law enforcement from seeing inside the parcels, and placed the parcels containing drugs in various USPS receptacles throughout Orange County. Codefendant Pasek paid defendant a percentage, at least five percent, of the sales of the drugs that codefendant Pasek sold both over the internet and locally, that defendant manufactured and aided in the distribution thereof.

On or about January 5, 2018, and January 24, 2018, defendant and codefendant Pasek, using their darkweb marketplace, sold 100 pills (on each date) purported to be "pressed oxy" containing .8mg of fentanyl in exchange for approximately $530 (on each date) in Bitcoin to a federal agent posing in an undercover capacity.  On March 5, 2018, defendant placed into a USPS receptacle in Newport Beach, California, seven USPS priority mail parcels, which contained approximately 1,400 round, blue pills stamped with "A215" that contained fentanyl, which defendant assisted to manufacture.  On April 2, 2018, defendant placed into an USPS receptacle in Santa Ana, California, thirteen USPS priority mail parcels, which contained approximately 4,000 round, blue pills stamped with "A215" that contained fentanyl, which defendant assisted to manufacture.  On April 3, 2018, defendant and codefendants Pasek and Suarez possessed with the intent to distribute, approximately 99,536 round, blue pills stamped with "A215," as well as possessed with the intent to distribute approximately 864 oblong, white pills stamped with "GG249," along with large bags containing blue and white powders, scales, and a pill press.

The drugs that law enforcement seized from defendant and codefendants Pasek and Suarez, have been properly tested by the United States Postal Service's Forensic Laboratory Services, which include the following amount of drugs and the type of drugs:

| | |
|---|---|
| Fentanyl | 2076 grams |
| Cyclopropyl Fentanyl | 3815 grams |
| Methoxyacetyl Fentanyl | 2032 grams |
| Carfentanil | 64 grams |

| | |
|---|---|
| Alprazolam | 247 grams |

## III. SENTENCING RECOMMENDATION

### A. The Government's Guideline Calculation

The Government submits that the following guideline calculation applies in the sentencing of defendant:

| | | |
|---|---|---|
| Base Offense Level: | 36 | U.S.S.G. § 2D1.1(a)(5) |
| Downward Departure | -2 | U.S.S.G. § 2D1.1(b)(18) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 31 | |

The Government does not believe the facts before this Court, specifically defendant's admitted to factual basis, are sufficient to support the two-level upward adjustment for "mass-marketing," pursuant to U.S.S.G. § 2D1.1(b)(7) as the USPO recommended. In reviewing the PSR, and the underlying facts of this case, the Government does believe a two-level "safety valve" departure pursuant U.S.S.G. § 2D1.1(b)(18) is appropriate, however, no further departure is warranted.[1]

A criminal history category of I and a total offense level of thirty-one, yields an advisory sentencing range of 108-135 months imprisonment.

---

[1] In the Government's exclusive judgment and discretion, the Government does not believe any further departure is warranted in this case pursuant to U.S.S.G. § 5K1.1. Although no explanation is needed, this decision is based on, among other factors, the lack of "significance and usefulness" and "timeliness" of defendant's assistance.

**B.   The Government's Recommended Sentence**

The law provides that sentencing courts must start with the sentence advised by the Sentencing Guidelines. <u>United States v. Booker</u>, 543 U.S. 220, 264 (2005) ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."); <u>United States v. Cantrell</u>, 433 F.3d 1269, 1279 (9th Cir. 2006) (stressing that "district courts still must consult the Guidelines and take them into account when sentencing, even though they now have the discretion to impose non-Guidelines sentences"). Pursuant to 18 U.S.C. § 3553(a), the court should "impose a sentence sufficient, but not greater than necessary," to comply with the enumerated purposes of sentencing, including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1), (2).

Although the USPO believed defendant's advisory sentencing range was 168-210 months' imprisonment, the USPO basically recommended a five-level downward variance (and nearly seven year downward variance) for the following mitigating reasons: "Cao had a troubled childhood, he has no criminal contacts, he was addicted to drugs, and he has been a contributing member of society by graduating from high school and attending college." The Government simply cannot agree with the USPO's recommended variance nor the "bases" justifying the

variance.  Most notably, the Government is not sure how being addicted to drugs is a mitigating factor, but would have no objection to defendant participating in the RDAP program, and upon successful completion, can receive a sentencing reduction.[2]  The agreed-to-facts in this case demonstrably show that defendant's "contributions to society," were deleterious and hardly a mitigating factor.  Specifically, the significant quantity of opioids and fentanyl- and fentanyl-analogue-based drugs as well as operating a clandestine drug laboratory in a crowded residential and commercial area (the Newport Beach Peninsula), easily outweighs "graduating from high school and attending college."  Finally, defendant's criminal history score reflects defendant's lack of criminal history.

As a result, the Government recommends this Court sentence defendant to: 108 months' imprisonment; pay a special assessment of $100; and serve three years of supervised release under the conditions set forth by the USPO.  The Government believes this sentence is reasonable and is the minimum sentence necessary to provide appropriate general and specific deterrence, to promote respect for the law, to provide just punishment, and to reflect the seriousness of defendant's crime.

**IV. CONCLUSION**

The Government recommends that this Court follow the Government's sentencing recommendation, which is both reasonable and appropriate in this case, and is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a).

---

[2] The PSR is completely silent on whether defendant told Pre-Trial Services about his addiction(s) upon arrest and/or whether he has availed himself to any drug treatment and counseling while in pre-trial custody.

7